UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
UNITED STATES OF AMERICA            :

    v.                              :   ECF Case

ROBERT KWOK,                        :   12 Cr. 405 (RPP)

    Defendant.                       :

------------------------------------- X

## SENTENCING MEMORANDUM
## SUBMITTED ON BEHALF OF ROBERT KWOK

COOLEY LLP
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 479-6000
Laura Grossfield Birger
Jonathan Bach
Jennifer Pavane Kenter

*Attorneys for Defendant Robert Kwok*



Laura Grossfield Birger
T: +1 212 479 6079
F: +1 212 253 4284
lbirger@cooley.com

October 5, 2012

Honorable Robert P. Patterson
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**RE: United States v. Robert Kwok, 12 Cr. 405 (RPP)**

Dear Judge Patterson:

      We respectfully submit this letter on behalf of Robert Kwok in anticipation of his sentencing, scheduled for October 17, 2012.

      On May 21, 2012, Mr. Kwok waived indictment and pleaded guilty to a one-count Information charging him with conspiracy to commit securities fraud ("the Information") based on conduct that occurred between January, 2008 and July, 2009. Pursuant to a plea agreement, Mr. Kwok's Sentencing Guidelines range is 0-6 months. See PSR ¶ 3. For the reasons set forth below, we respectfully request that the Court follow the recommendation of the Probation Department and impose a sentence of probation, which represents the bottom of the applicable Sentencing Guidelines range.

Circumstances of the Offense

      Mr. Kwok's involvement in this offense—his first and only brush with the law—stems entirely from his acquaintance with Reema Shah (identified in the Information as "CC-1"). At the time of the offense, Mr. Kwok was Director of Business Operations at Yahoo! Inc. ("Yahoo!"). At Yahoo!, Mr. Kwok managed a team of 10 people and was responsible for business strategy and project management.

      Mr. Kwok first met Reema Shah while attending a Yahoo! off-site conference in early 2008. Ms. Shah attended a different conference being held in the same hotel, and the two individuals met purely by happenstance. Upon hearing that he was a Yahoo! executive, Ms. Shah introduced herself to Mr. Kwok, and told him that she was a portfolio manager at an asset management firm. Mr. Kwok, interested in expanding his social and professional networks, willingly struck up an acquaintance with Ms. Shah.[1] After their chance meeting, the two met

---

[1] Mr. Kwok is dedicated to mentoring and networking with colleagues and other professionals. See Exhibit 1 (Letter from D. Yoo); Exhibit 2 (Letter from T. Lim); Exhibit 3 (Letter from R. Sandel); Exhibit 4 (Letter from C. Porter). His relationship with Ms. Shah grew naturally out of that interest.



Hon. Robert P. Patterson
October 5, 2012
Page Two

periodically for coffee and discussed their jobs. Mr. Kwok was particularly interested in hearing about Ms. Shah's career as a hedge fund manager, because he was considering a possible career change. For that reason, in their early conversations, they discussed "buy-side" trading, including how to select companies in which to invest.

In early April 2008, Ms. Shah told Mr. Kwok that he should look into buying stock in Moldflow, Inc., and that she had heard it was about to be acquired. Mr. Kwok did invest in Moldflow stock, although he recognized that Ms. Shah's information was non-public inside information. When the Moldflow acquisition was announced a few weeks later, Mr. Kwok sold his stock for a profit of approximately $4,700.

Around the same time, Ms. Shah began asking Mr. Kwok specific questions about Yahoo!, probing for confidential, inside information that she could use for trading purposes. Over time, in a lapse of judgment, Mr. Kwok provided confidential information about Yahoo! to Ms. Shah in response to her questions. Often Mr. Kwok provided information which was non-specific or speculative because his job did not involve access to Yahoo!'s financials. Although Ms. Shah traded in Yahoo! stock, Mr. Kwok did not.

By the fall of 2009, conversations between Mr. Kwok and Ms. Shah petered out. In February 2010, Mr. Kwok started a new job at a different company. When Mr. Kwok was confronted by the FBI in November, 2011 about his communications with Ms. Shah, he had not spoken to or thought of her in approximately two years. Mr. Kwok admitted his conduct to the FBI, and promptly, through his attorneys, tried to cooperate in the investigation. Unfortunately for Mr. Kwok, the agents had contacted Ms. Shah before contacting him, and she was already cooperating against him and possibly others unknown to Mr. Kwok. Due to Mr. Kwok's limited involvement, he had no one to cooperate against except Ms. Shah. This led to the unusual situation where Ms. Shah, the "big fish," reaped the benefits of a cooperation agreement (and presumably a substantial reduction in sentence), while Mr. Kwok, the "little fish," was deprived of that opportunity. Ultimately, Mr. Kwok waived indictment and pleaded guilty to the Information.

A Sentence of Probation is Warranted

As reflected in the PSR and the plea agreement, the applicable Sentencing Guidelines range is 0-6 months. Title 18, United States Code, Section 3553(a) requires a court to consider the criteria set forth in that statute and to impose a sentence that is "sufficient, but not greater than necessary." In this case, consideration of each of the § 3553(a) factors counsels in favor of a sentence at the bottom of the Guidelines range, specifically, a sentence of probation.

*First*, the nature and circumstances of the offense warrant a sentence at the bottom of the Guidelines range. As set forth above, Mr. Kwok was not part of an organized network of sophisticated financial industry professionals who traded inside information for their mutual profit. Mr. Kwok's offense centered around one other person, Ms. Shah, a hedge fund manager who took advantage of Mr. Kwok's open and friendly nature to obtain inside information about Mr. Kwok's employer. Although Ms. Shah is the sophisticated industry professional who stood to profit from the trades and is far more culpable than Mr. Kwok, she now reaps the benefit of

Case 1:12-cr-00405-RPP   Document 9   Filed 10/05/12   Page 4 of 6



Hon. Robert P. Patterson
October 5, 2012
Page Three

cooperating with law enforcement. Mr. Kwok, on the other hand, is not a financial industry professional and has never done anything like this before.

Nor was Mr. Kwok motivated by greed. As reflected by the $4,754 forfeiture sought by the Government, Mr. Kwok's profits from his trades in Moldflow were extremely modest. And Ms. Shah did not pay him for information he provided about Yahoo! (nor did he request or expect any compensation). Mr. Kwok did not trade on the Yahoo! information himself, and he did not know specific details about trades Ms. Shah executed or what, if any, profits she made. As those who know Mr. Kwok attest, he is fundamentally honest, generous and fair. See Exhibit 1 (Letter from D. Yoo); Exhibit 2 (Letter from T. Lim); Exhibit 4 (Letter from C. Porter); Exhibit 5 (Letter from E. Kwok). His dealings with Ms. Shah were a mistake which is inconsistent with his general good character.

Shortly after he was approached by the agents, Mr. Kwok's attorneys contacted the Government and offered his cooperation. But because he had no involvement in any illicit activities other than this offense, and because the Government had already approached Ms. Shah (who attracted more interest from law enforcement) and procured her cooperation, Mr. Kwok had nothing to offer the Government which they did not already have. Ironically, Mr. Kwok's lesser culpability compared to Ms. Shah meant that he that he was unable to get the sentencing benefits of cooperation.

*Second*, a sentence of probation for Mr. Kwok would be consistent with sentences imposed in other insider trading cases prosecuted in this district. In recent years, numerous non-cooperating defendants in insider trading cases have received sentences with no jail time, even when those sentences were below the defendant's Guidelines range.[2] Moreover, nearly every SDNY insider trading defendant in recent years has received a sentence at the bottom of—or below—the Sentencing Guidelines range.[3] A sentence at the minimum of Mr. Kwok's Guidelines range is particularly appropriate, because the facts of this case pale in comparision to many others prosecuted in this district: Mr. Kwok was not a ringleader or an industry professional, did not participate in a widespread network of tippers and tippees, did not reap

---

[2] *See, e.g., United States v. Peterson*, 11 Cr. 665 (RPP); *United States v. Ng*, 11 Cr. 161-4 (JSR); *United States v. Paparrizos*, 09 Cr. 400 (PAC); *United States v. Bowers*, 09 Cr. 496 (GBD); *United States v. Tucker*, 08 Cr. 893 (AKH); and *United States v. Holzer*, 09 Cr. 470 (VM).

[3] Based on a review of available data concerning SDNY insider trading sentences sentences over the past 4 years, we are aware of only one defendant who received a sentence above the bottom of his Guidelines range. See *United States v. Moffat*, 10 Cr. 270 (DAB). (That defendant was not similarly situated to Mr. Kwok; he was a top executive, considered next-in-line to be the chief executive of a major company, who leaked inside information about the company he essentially ran.) Of the other 42 defendants for whom we were able to find information, 38 received sentences below their respective Guidelines ranges, and 4 received sentences at the bottom of their Guidelines ranges. *See, e.g.*, Morrison & Foerster, 2011 Insider Trading Annual Review, *available at* http://www.mofo.com/files/Uploads/Images/2011-Insider-Trading-Review.pdf; Morrison & Foerster, 2010 Insider Trading Year-End Review, *available at* http://www.mofo.com/files/Uploads/Images/110223-Insider-Trading-2010-Review.pdf; Morrison & Foerster, Insider Tradng: 2009 Review, *available at* http://www.jdsupra.com/legalnews/insider-trading-2009-review-29812/.

1114 Avenue of the Americas, New York, NY 10036  T: (212) 479-6000  F: (212) 479-6275  www.cooley.com



Hon. Robert P. Patterson
October 5, 2012
Page Four

substantial profits, and tried to cooperate with law enforcement. Here, we do not ask for a below-Guidelines sentence. Instead, we respectfully request that the Court impose a sentence at the bottom of the applicable range.

*Third*, a probationary sentence will permit Mr. Kwok to continue operating his fledgling restaurant. As described in the attached letters, Mr. Kwok founded the Stone Korean Kitchen with two friends/partners in 2009. They have worked hard to gain a foothold in the difficult restaurant business, and the restaurant is now finally a success, employing more than 30 people and turning a profit. *See* Exhibit 1 (Letter from D. Yoo) at 2; Exhibit 2 (Letter from T. Lim) at 1-2. Mr. Kwok plays an integral role in operating the restaurant, and he is responsible for all of the back office (non-food) aspects of the business. PSR at ¶ 49. His partners recognize that Mr. Kwok's efforts are necessary to support the operation, and they are concerned about the future of the restaurant if he is not able to continue devoting substantial time and energy to its success. *See* Exhibit 1 (Letter from D. Yoo); Exhibit 2 (Letter from T. Lim).

*Fourth*, Mr. Kwok's personal and family circumstances warrant a non-custodial sentence. Mr. Kwok has three young sons, ranging in age from less than 2 years to 6 years old. PSR ¶ 39. As described by his wife, Mr. Kwok is an active, caring, and extremely involved parent. Mr. Kwok has always made a point of spending extensive quality time with his children despite a demanding work schedule, and his children will plainly suffer in his absence. Exhibit 5 (Letter from E. Kwok) at 1-2. In addition, Mr. Kwok's wife does not work outside the home so that she can care for their children full time; if Mr. Kwok were incarcerated, his family would be deprived of their sole source of financial support.

Mr. Kwok is also a dedicated son and son-in-law. With one brother who is a musician living in Hong Kong, Mr. Kwok is the sole supporter—in terms of finances, time, and emotional support—for his parents. *See* PSR ¶ 34. Mr. Kwok's mother lives alone and suffers from several medical conditions, so he spends extensive time driving her to medical appointments, ensuring that she is receiving the necessary care, and also providing general help and support. Similarly, when his wife's mother was seriously ill earlier this year, Mr. Kwok encouraged his wife to fly to Los Angeles to take care of her, while he watched his three sons, managed his restaurant business, and aided his own parents by himself. *See* Exhibit 5 (Letter from E. Kwok).

Mr. Kwok also provides substantial financial assistance to both his parents and his in-laws. For example, Mr. Kwok paid off his mother's mortgage, and gave his father $25,000 to pay for oral surgery he needed but could not afford. Recently, Mr. Kwok purchased a condominium in San Francisco for his in-laws so that they can relocate close to Mr. Kwok and his wife, and both Mr. and Mrs. Kwok can more easily provide help when needed. *See* Exhibit 5 (Letter from E. Kwok).

*Fifth*, there is no need for a custodial sentence to protect the public, provide just punishment, afford adequate deterrence or promote respect for the law. This offense is an anomaly for Mr. Kwok. His otherwise unblemished record, and the high regard in which his friends and family hold him, speak to his good character. There is no question that this lapse in



Hon. Robert P. Patterson
October 5, 2012
Page Five

judgment will not be repeated.  Regardless of the sentence imposed, Mr. Kwok has been punished:  he is now a convicted felon, and he has agreed to a lifetime bar from serving as a director or officer of a public company.  His reputation has been tarnished, and his career prospects have been sharply curtailed.

In sum, Mr. Kwok is a hard-working, family man who was drawn into conduct entirely out of character for him.  We respectfully request that the Court follow the recommendation of the Probation Department and sentence Mr. Kwok to a term of probation.

Respectfully submitted,

Laura Grossfield Birger


cc: AUSA Jillian Berman